**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Freddy Allen Samora, | No. CV-13-01703-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Freddy Allen Samora seeks judicial review of the Commissioner's decision finding him not disabled within the meaning of the Social Security Act.  Doc. 16.  For the reasons that follow, the Court will remand this case for further proceedings consistent with this order.

## I.  Background.

Plaintiff applied for disability and supplemental security insurance benefits in April 2010, alleging disability beginning June 1, 2005.  Doc. 18 at 2.  After a hearing on January 31, 2012, an administrative law judge ("ALJ") issued an opinion on March 6, 2012, finding Plaintiff not disabled.  A.R. 20-28.  Plaintiff's request for review was denied by the Appeals Council and the ALJ's opinion became the Commissioner's final decision.  Doc. 18 at 2.

## II.  Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The court

may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

### A. Five-Step Sequential Evaluation.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's

1   residual functional capacity, age, education, and work experience.  § 404.1520(a)(4)(v).

2   If so, the claimant is not disabled.  *Id.*  If not, the claimant is disabled.  *Id.*

3         At step one, the ALJ determined that Plaintiff meets the insured status

4   requirements of the Social Security Act and that he has not engaged in substantial gainful

5   activity since June 1, 2005.  At step two, the ALJ found that Plaintiff has the following

6   impairments that are severe when considered in combination: diabetes mellitus, a bipolar

7   disorder, and a mood disorder.  At step three, the ALJ found that Plaintiff does not have

8   an impairment or combination of impairments that meets or medically equals an

9   impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.  At step four, the ALJ

10  found that Plaintiff has the residual functional capacity to perform light work with

11  restrictions as defined in 20 C.F.R. §§ 404.1567(b) and 416.929(b), that Plaintiff is

12  limited to unskilled work, that he is precluded from work which requires interaction with

13  the public, and that he is limited to simple reading, writing, and math.  At step five, the

14  ALJ concluded that there are jobs that exist in significant numbers in the national

15  economy that Plaintiff could perform.

16  **III.    Analysis.**

17        Plaintiff argues that the ALJ's decision is defective for three reasons.  First, he

18  argues that the ALJ erred in proceeding with the hearing after Plaintiff indicated that he

19  had a representative.  Doc. 16 at 1.  Second, he asserts that the ALJ erred in rejecting the

20  opinion of Dr. Angulo, an examining psychologist.  *Id.* at 13.  Finally, he argues that the

21  ALJ erred in rejecting his subjective complaints without providing clear and convincing

22  reasons.  *Id.* at 18.  The Court will consider each argument in turn.

23        **A.    Lack of Representation.**

24        "Lack of counsel does not affect the validity of [a] hearing unless the plaintiff can

25  demonstrate prejudice or unfairness in the administrative proceedings."   *Key v.*

26  *Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985).  Plaintiff argues generally that Plaintiff did

27  not understand the "ramifications of proceeding with the hearing" without counsel and

28  that the ALJ should have known that Plaintiff had difficulty reading and should have

1   postponed the hearing.  Doc. 16 at 13.  Plaintiff also vaguely alleges that the ALJ "took

2   advantage of [Plaintiff]'s clearly expressed uncertainty" to proceed with the hearing.  *Id*.

3   Plaintiff does not, however, argue or demonstrate that any prejudice or unfairness

4   resulted from his decision to proceed without representation.   Accordingly, the Court

5   cannot conclude that the ALJ committed legal error by proceeding with the hearing.

6   **B.     Weighing of Medical Source Evidence.**

7   **1.     Legal Standard.**

8   The Ninth Circuit distinguishes between the opinions of treating physicians,

9   examining physicians, and non-examining physicians.  *See Lester v. Chater*, 81 F.3d 821,

10  830 (9th Cir. 1995).   Generally, an ALJ should give greatest weight to a treating

11  physician's opinion and more weight to the opinion of an examining physician than to

12  one of a non-examining physician.  *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th

13  Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when

14  evaluating opinion evidence, including length of examining or treating relationship,

15  frequency of examination, consistency with the record, and support from objective

16  evidence).  If it is not contradicted by another doctor's opinion, the opinion of a treating

17  or examining physician can be rejected only for "clear and convincing" reasons.  *Lester*,

18  81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).   A

19  contradicted opinion of a treating or examining physician "can only be rejected for

20  specific and legitimate reasons that are supported by substantial evidence in the record."

21  *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

22  An ALJ can meet the "specific and legitimate reasons" standard "by setting out a

23  detailed and thorough summary of the facts and conflicting clinical evidence, stating his

24  interpretation thereof, and making findings."  *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th

25  Cir. 1986).  But "[t]he ALJ must do more than offer his conclusions.  He must set forth

26  his own interpretations and explain why they, rather than the doctors', are correct."

27  *Embrey*, 849 F.2d at 421-22.

28

1    The Commissioner is responsible for determining whether a claimant meets the
2    statutory definition of disability and does not give significance to a statement by a
3    medical source that the claimant is "disabled" or "unable to work."    20 C.F.R.
4    § 416.927(d).

5         **2.    Dr. Angulo.**

6         The ALJ set forth several reasons for not assigning significant weight to the
7    opinion of Dr. Angulo, a state-agency examining psychologist.  First, the opinion was
8    based on a one-time examination of Plaintiff and the doctor "seemed to accept the
9    [Plaintiff]'s subjective reports of symptoms and limitations as true."  A.R. 26.  Next,
10   "treatment records do not support the severity of symptoms and limitations alleged by the
11   [Plaintiff]."  A.R. 26.  Finally, even if he were to accept Dr. Angulo's opinion, the ALJ
12   found "no reason to believe that the limitations reported existed for a 12 month time-
13   period."  A.R. 26.

14        Plaintiff argues that because the ALJ did not identify a contradicting opinion, he
15   was required to provide clear and convincing reasons for rejecting the opinion of Dr.
16   Angulo.  Doc. 16 at 14.  It is unclear whether the ALJ identified a conflicting opinion.
17   The ALJ purported to give Dr. Angulo's opinion less than full weight, but did not clearly
18   explain why or clearly identify evidence that contradicts Dr. Angulo's findings.  Instead,
19   the ALJ stated only that "treatment records" do not support the severity of Plaintiff's
20   symptoms."  The ALJ did not identify the treatment records he had in mind.  A.R. 26.

21        Earlier in his opinion, the ALJ does discuss the treatment records of Plaintiff's
22   primary care physician, Dr. Harsimran Singh (A.R. 196-221), but he does so without
23   identifying Dr. Singh by name or discussing the treatment relationship.  A.R. 25.  In his
24   discussion of Dr. Singh's notes, the ALJ stated that "by February 2010, [Plaintiff]
25   reported feeling well overall," and that "[e]xamination has not revealed neurological
26   abnormalities[.]"  A.R. 25.  The ALJ also noted that there was no evidence of treatment
27   after June 2010 and Plaintiff "had no specific complaint at his last medical appointment
28   on June 23, 2010."  The ALJ did not identify the medical records that formed the basis of

this conclusion.  A.R. 25.  The Court was able to locate additional records from Dr. Singh indicating that Plaintiff saw Dr. Singh on June 23, 2010, and reported no specific complaint.  A.R. 256-58.

Because the ALJ's opinion did not explain why he believed Dr. Angulo's opinion conflicted with the record, the Court cannot easily evaluate whether Dr. Singh's treatment records are contradictory.  There are places in Dr. Singh's records where Plaintiff reported feeling "well" overall (A.R. 204, 215), but it is unclear whether Dr. Singh had any involvement in diagnosing or treating the psychological symptoms which are the subject of Dr. Angulo's opinion.  Dr. Singh noted at an appointment on October 16, 2009, that the purpose of the appointment was to "discuss [Plaintiff's] blood work results which [were] done by his psychiatrist."  A.R. 196.  This appears to indicate that a medical professional other than Dr. Singh was responsible for treating Plaintiff's psychological symptoms.  Additionally, although the ALJ indirectly stated that Dr. Singh's treatment records did not reveal neurological abnormalities, there is no indication in Dr. Singh's records as to what sort of examinations of neurological or psychological symptoms were performed.  For example, under the section "Neurology" in Dr. Singh's treatment notes, it says "Negative for headache, tingling, numbness, seizures."  *See, e.g.*, A.R. 137.  But Dr. Angulo did not report on such conditions, nor is there any indication that Plaintiff is claiming to exhibit any of those symptoms.  Under the section "Psychology" in Dr. Singh's treatment notes, it says "Negative for suicidal ideation, mental or physical abuse."  A.R. 137.  Again, Dr. Angulo did not identify any of these conditions, nor does Plaintiff claim they exist.  Dr. Singh does note that Plaintiff was "alert and oriented" during physical examinations (A.R. 198), but Dr. Angulo also found that Plaintiff was alert and oriented during his examination (A.R. 232).

In summary, the Court cannot conclude that Dr. Singh's treatment records contradict Dr. Angulo's opinion.  Because the ALJ did not discuss any other medical opinions, the ALJ was required to provide "clear and convincing" reasons for discounting Dr. Angulo's opinion.

1    The ALJ first stated that he assigned little weight because Dr. Angulo examined

2  Plaintiff on only one occasion.   This is a valid consideration.   *See* 20 C.F.R.

3  § 416.927(c)(1) ("Generally the longer a treating source has treated you and the more

4  times you have been seen by a treating source, the more weight we will give to the

5  source's medical opinion.").

6    Next, the ALJ discounted Dr. Angulo's opinion because he appeared to accept

7  Plaintiff's statements about his limitations as true.   Plaintiff quotes from *Ryan v.*

8  *Commissioner of Social Security*, 528 F.3d 1194, 1198 (9th Cir. 2008), which analyzed

9  whether an ALJ had provided "clear and convincing" reasons for discounting the opinion

10  of an examining physician.   *Ryan*, 528 F.3d at 1199.  The court stated that "an ALJ does

11  not provide clear and convincing reasons for rejecting an examining physician's opinion

12  by questioning the credibility of the patient's complaints where the doctor does not

13  discredit those complaints and supports his ultimate opinion with his own observations."

14  *Id.*  The court observed that nothing in the record suggested that the examining physician

15  "disbelieved [plaintiff]'s description of her symptoms, or that [the examining physician]

16  relied on those descriptions more heavily than his own clinical observations" in

17  concluding that the plaintiff was limited.   *Id* at 1200.  Here, Dr. Angulo conducted a

18  mental status exam of Plaintiff and recorded his own observations.   A.R. 232-33.

19  Nothing in the record suggests that Dr. Angulo relied more heavily on Plaintiff's

20  description of his symptoms than his own clinical observations, and nothing in the record

21  suggests that Dr. Angulo disbelieved Plaintiff's symptoms.   This is not a clear and

22  convincing reason to reject Dr. Angulo's opinion.

23    The ALJ then stated that "treatment records do not support the severity of

24  symptoms and limitations alleged by the [Plaintiff]."  A.R. 26.  Because the ALJ did not

25  identify what he means by "treatment records" and the Court has been unable to conclude

26  that Dr. Singh's treatment records contradict Dr. Angulo's findings, this is not a clear and

27  convincing reason for rejecting Dr. Angulo's opinion.

28    Finally, the ALJ stated that there was no reason to believe that the limitations

- 7 -

1    reported existed for a 12-month period, but Dr. Angulo specifically marked in his opinion

2    that Plaintiff's conditions would impose limitations for 12 months.  A.R. 234.  The ALJ

3    does not explain why there is no reason to believe that Plaintiff's limitations would last

4    for 12 months.  This reason is not clear and convincing.

5         In summary, the ALJ provided only one credible reason for discounting Dr.

6    Angulo's opinion – that the doctor saw plaintiff only once.  While this is a legitimate

7    criticism, it does not amount to clear and convincing reasons for rejecting Dr. Angulo's

8    opinion.  The Court therefore concludes that the ALJ committed legal error in rejecting

9    the opinion of an examining physician and will vacate Defendant's decision.  The Court

10   need not address Plaintiff's remaining argument.

11        **C.     Remand.**

12        Having decided to vacate Defendant's decision, the Court has the discretion to

13   remand the case for further development of the record or for an award benefits.  *See*

14   *Reddick*, 157 F.3d at 728.  In *Smolen*, the Ninth Circuit held that evidence should be

15   credited and an action remanded for an immediate award of benefits when the following

16   three factors are satisfied:  (1) the ALJ has failed to provide legally sufficient reasons for

17   rejecting evidence, (2) there are no outstanding issues that must be resolved before a

18   determination of disability can be made, and (3) it is clear from the record that the ALJ

19   would be required to find the claimant disabled were such evidence credited.   80

20   F.3d 1273, 1292 (9th Cir. 1996).

21        Defendant argues that the Court should remand this case for further proceedings.

22   Doc. 18 at 17.  Defendant cites *Strauss v. Commissioner of the Social Security*

23   *Administration*, 635 F.3d 1135, 1138 (9th Cir. 2011), for the proposition that "[a]

24   claimant is not entitled to benefits under the Act unless the claimant is, in fact, "disabled"

25   as defined by the statute."  *Id.*  Defendant argues that "[t]he court may not move from the

26   conclusion that an ALJ erred to an order requiring payment of benefits without the

27   intermediate step of analyzing whether the claimant was, in fact, disabled."  *Id.* at 17-18

28   (citing *Strauss*, 635 F.3d at 1138).  Defendant further argues that "[w]here, as here, there

is, at best, conflicting evidence as to whether the statutory standard for disability has been met, the Court should remand for further proceedings." *Id.* at 18.

The transcript of the January 31, 2012 hearing reveals that the vocational expert was not asked a hypothetical question based on the limitations assessed by Dr. Angulo. A.R. 311-13. Accordingly, there is no information in the record as to what work would be available to Plaintiff were Dr. Angulo's opinion credited as true. The Court therefore cannot conclude that Plaintiff would be entitled to an award of benefits if Dr. Angulo's opinion were credited as true, and will remand this case for further proceedings.

**IT IS ORDERED:**

1. This case is **remanded** for further proceedings consistent with this order.

2. The Clerk is directed to enter judgment and **terminate** this action.

Dated this 18th day of June, 2014.

_____
David G. Campbell
United States District Judge